IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| STEPHEN K. EUGSTER, | ) | No. CV 09-357-SMM |
| | ) | |
| Plaintiff, | ) | **MEMORANDUM OF DECISION AND** |
| | ) | **ORDER** |
| v. | ) | |
| | ) | |
| WASHINGTON STATE BAR | ) | |
| ASSOCIATION, et. al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Pending before the Court is Defendants' Chief Justice Barbara A. Madsen, Justices Gerry L. Alexander, Charles W. Johnson, Richard B. Sanders, Tom Chambers, Susan J. Owens, Mary E. Fairhurst, James M. Johnson, and Debra L. Stephens of the Washington State Supreme Court (hereafter, "Defendant Justices") Motion to Dismiss (Doc. 23). Also before the Court is Defendants' Washington State Bar Association and Washington State Bar Association Board of Governors Salvador A. Mungia, Steven G. Toole, Mark A. Johnson, G. Geoffrey Gibbs, Brian L. Comstock, Loren Scott Etengoff, Anthony David Gipe, Lori S. Haskell, David S. Heller, Nancy L. Isserlis, Leland B. Kerr, Carla C. Lee, Roger A. Leishman, Catherine L. Moore, Patrick A. Palace, Marc L. Silverman, and Brenda Williams (hereafter, "WSBA Defendants") Motion to Dismiss (Doc. 20). Plaintiff Stephen K. Eugster responded to both motions (Doc. 27). Defendant Justices (Doc. 29) and WSBA Defendants (Doc. 28) then replied. Although the parties initially noticed oral argument, the Court finds the motions to dismiss suitable for decision without oral argument.

1

**BACKGROUND**

2         The Plaintiff in this case is Stephen K. Eugster, a Washington attorney who was

3   admitted to the Washington State Bar in 1970. (Doc. 16: ¶ 14). Plaintiff practiced law in the

4   state of Washington until June 11, 2009, when the Washington Supreme Court suspended

5   him from the practice of law for eighteen months and ordered him to pay restitution to the

6   estate of the client affected by his sanctioned conduct. (Id.: ¶¶ 18, 163) (citing In re Eugster,

7   209 P.3d 435, 452 (Wash. 2009)); Doc. 27 at 2: 11-19.

8         After the Washington Supreme Court entered its decision, Plaintiff filed motions to

9   dismiss the judgment against him due to the alleged impropriety of the disciplinary hearing

10  officer, Jane Risley, and the investigating attorney, Jonathan Burke. (Doc. 16: ¶¶ 20, 167,

11  171).   The Chief Hearing Officer, James Danielson, denied Plaintiff's motion to dismiss

12  relating to the disqualification of the hearing officer; in light of this denial, he treated the

13  other motion to dismiss related to Mr. Burke's conduct as moot. (Id.: ¶ 171).[1]

14        On May 1, 2006, while Mr. Braff's complaint was pending, another individual, Mattie

15  Kivett filed an unrelated grievance against Plaintiff with the WSBA. (Id.: ¶ 21). During July

16  and August 2009, after the Washington Supreme Court entered its June 2009 judgment

17  against Plaintiff, the WSBA and Mr. Burke conducted an investigation of Ms. Kivett's

18  grievance.  (Id.: ¶ 24).   Following the investigation, the WSBA dismissed the matter,

19  advising both Plaintiff and Ms. Kivett of the dismissal in a December 21, 2009 letter written

20  by Mr. Burke. (Id.: ¶¶ 25, 27).  In the letter, Mr. Burke noted, on behalf of the WSBA, that:

21  (1) the grievance was dismissed; (2) the letter was not a finding of misconduct or discipline;

22  (3) Plaintiff needs to more carefully analyze the law before filing lawsuits; (4) Plaintiff was

23  on notice that, in the future, the complained of conduct must be avoided; and (5) good cause

24

25  ─────────────────

26        [1] Plaintiff now alleges that Mr. Danielson's professional relationships should have
    disqualified him from acting as the Chief Hearing Officer. (Doc. 16: ¶ 110). At the time Mr.
27  Danielson held the position, he was a shareholder in the same law firm as Stanley A. Bastian,
    who has held various leadership roles within the WSBA, including President.  (Id.: ¶¶ 98-
28  101, 109).

existed for the retention of the file materials related to the complaint for five years from the date of the letter. (Id.: ¶ 27).

On January 21, 2010, Plaintiff filed an amended complaint under 42 U.S.C. § 1983 and 28 U.S.C. § 2201, alleging that Washington's attorney discipline system as it stands, and as applied, violates Plaintiff's due process rights under the Fifth and Fourteenth Amendments to the United States Constitution. (Id.: ¶ 1). Plaintiff's amended complaint contained two counts against WSBA Defendants and Defendant Justices. However, following a telephonic hearing held on January 25, 2010, Plaintiff dismissed Count II. (Doc. 18). In Count I, Plaintiff alleges that Defendants, in their individual capacities and in concert, violate Plaintiff's due process rights under the Fifth and Fourteenth Amendments in their administration of Washington's attorney discipline system. (Doc. 16: ¶ 158). Plaintiff requests this Court declare[2] that Washington's attorney discipline system is in violation of Plaintiff's due process rights under the Fifth and Fourteenth Amendments and enjoin Defendants from continuing to act with respect to Washington's attorney discipline system. (Id. at 32-33: ¶¶ 1-2). In Count II, Plaintiff alleged that Defendants violated his due process rights under the Fifth and Fourteenth Amendments with respect to the issuance of the final judgment against him by the Washington Supreme Court, In re Eugster, 209 P.3d 435. In his prayer for relief, Plaintiff asked the Court to declare the disciplinary judgments and orders against him void. (Id.: ¶ 3). As Plaintiff dismissed Count II, Plaintiff no longer asks this Court to declare the disciplinary judgments and orders against him void. (Doc. 27: 24-25). As a result, only Count I of Plaintiff's amended complaint remains.

_____

[2] The Declaratory Judgment Act authorizes courts to declare the rights and other legal relations of any interested party seeking such a declaration. 28 U.S.C. § 2201(a). As the Declaratory Judgment Act states that the court "may" act, it is "deliberately cast in terms of permissive, rather than mandatory, authority." 28 U.S.C. § 2201(a); accord. Gov't Employees Ins. Co. v. Dizol, 133 F.3d 1220, 1223 (9th Cir. 1998) (en banc) (citation omitted). While the Act authorizes the district court to provide declaratory relief, the district court is not required to do so. Brillhart v. Excess Ins. Co. of America, 316 U.S. 491, 494 (1942).

1    Essentially, Plaintiff has confined his claim to a challenge of the constitutionality of

2  the "rules, customs and practices" that govern Washington's attorney discipline system.

3  (Doc. 16: ¶ 151).  Plaintiff alleges that Defendants "are responsible for the implementation

4  and application of the Washington Lawyer Discipline System and its rules, customs and

5  practices." (Id.)  In Plaintiff's response to WSBA Defendants' and Defendant Justices'

6  motions to dismiss, Plaintiff confirms, "[t]his action has nothing to do with an ongoing case

7  and it has nothing to do with a past case." (Doc. 27 at 10: 13-14).  Plaintiff further clarifies

8  that the parties against which he seeks declaratory and injunctive relief are the Washington

9  State Bar Association, the members of the Board of Governors of the Washington State Bar

10  Association, individually, and the Justices of the Washington Supreme Court, individually.

11  (Id. at 9: 5-9).  The Washington Supreme Court, however, is not a party to the action. (Id. at

12  9: 9-10).

13                                **STANDARDS OF REVIEW**

14  A.    Rule 12(b)(6) Standard of Review

15    To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the

16  Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter,

17  accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal,

18  ___ U.S. ___, 129 S.Ct. 1937, 1949 (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544,

19  570 (2007)); see also Fed. R. Civ. P. 12(b)(6).  However, "the tenet that a court must accept

20  as true all of the allegations contained in a complaint is inapplicable to legal conclusions."

21  Iqbal, 129 S.Ct. at 1949.  Moreover, in determining whether a complaint sufficiently states

22  a claim for relief, the inference that the defendant is liable for the misconduct alleged must

23  be more than "merely possible," but "plausible."  Id. at 1949- 50.  "Dismissal with prejudice

24  and without leave to amend is not appropriate unless it is clear . . . that the complaint could

25  not be saved by amendment."  Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052

26  (9th Cir. 2003).

27  ///

28  ///

1  B.    Rule 12(b)(1) Standard of Review

2      A party may file a motion asserting lack of subject matter jurisdiction under Rule

3  12(b)(1) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(b)(1).  Additionally, "a

4  court may raise the question of subject matter jurisdiction, *sua sponte*, at any time during the

5  pendency of the action, even on appeal." United States v. Moreno-Morillo, 334 F.3d 819,

6  830 (9th Cir. 2003) (citing Snell v. Cleveland, Inc., 316 F.3d 822, 826 (9th Cir. 2002)); see

7  also Fed. R. Civ. P. 12(h)(3).  "The party asserting federal jurisdiction has the burden of

8  establishing it." Miguel v. Country Funding Corp., 309 F.3d 1161, 1164 (9th Cir. 2002)

9  (citation omitted).  All allegations in the complaint are taken as true and construed in favor

10  of the nonmoving party.  Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th

11  Cir. 2003).  Standing and ripeness pertain to a court's subject matter jurisdiction and, as such,

12  are properly raised in a Rule 12(b)(1) motion to dismiss. White v. Lee, 227 F.3d 1214, 1242

13  (9th Cir. 2000).

14                    **DISCUSSION**

15      Defendants raise a number of arguments as to why the Court should dismiss Plaintiff's

16  claim.  Defendants argue that any remaining demands for relief with regards to the past

17  disciplinary proceedings against Plaintiff are barred by the Rooker-Feldman doctrine and/or

18  the doctrine of res judicata. (Doc. 24 at 4: 13-15).  Additionally, Defendants argue that

19  Plaintiff lacks standing to bring this suit (Doc. 21 at 2: 23; Doc. 24 at 11: 9-10), and

20  Plaintiff's claim is not ripe for review (Doc. 24 at 14: 18).   Finally, Defendants assert that

21  Plaintiff's claims are barred by Eleventh Amendment immunity (Doc. 24 at 6: 17-18), and

22  Defendants are protected by various personal immunity doctrines. (Doc. 21 at 10: 6-7; Doc.

23  24 at 9: 14-16; Doc. 29 at 4: 17-19).

24  **I.    The Rooker-Feldman Doctrine**

25      The Rooker-Feldman doctrine is derived from the Supreme Court's decisions in

26  Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), and District of Columbia Court of

27  Appeals v. Feldman, 460 U.S. 462 (1983).  In both cases, the Supreme Court articulated the

28  principle that "lower federal courts are without subject matter jurisdiction to review state

court decisions . . . " Mothershed v. Justices of Supreme Court, 410 F.3d 602, 606 (9th Cir. 2005). Instead, "state court litigants may . . . only obtain federal review by filing a petition for a writ of certiorari in the Supreme Court of the United States." Id. Even if there is an independent basis for federal jurisdiction, a party may not appeal a decision of a state court to a federal district court. Noel v. Hall, 341 F.3d 1148, 1155 (9th Cir. 2003). Rooker-Feldman bars federal district court subject matter jurisdiction where a party seeks to take a formal, direct appeal or *a de facto appeal* of a state court judgment. Id.

However, the Rooker-Feldman doctrine does not preclude a federal district court from asserting subject matter jurisdiction in general challenges to state rules or statutes. Mothershed, 410 F.3d at 606. In Feldman, the Supreme Court held that "United States District Courts . . . have subject matter jurisdiction over general challenges to state bar rules, promulgated by state courts in non-judicial proceedings, which do not require review of a final state court judgment in a particular case." Feldman, 460 U.S. at 486. Additionally, Rooker-Feldman "does not otherwise override or supplant preclusion doctrine . . . " Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 284 (2005). Claims or issues litigated in prior proceedings may be barred by res judicata.[3] Id. at 293.

Here, Plaintiff dismissed Count II of his amended complaint, which alleged that WSBA Defendants and Defendant Justices violated Plaintiff's due process rights under the Fifth and Fourteenth Amendments through the past disciplinary action, In re Eugster. (Doc. 18). In Plaintiff's Response to Defendants' Motions to Dismiss, Plaintiff states that he "does not seek to have the court declare any disciplinary action against him void" and that "[t]he decisions of the Court will have no bearing on the discipline and orders entered against the

---

[3]Where a federal plaintiff "present[s] some independent claim . . . then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." Exxon, 544 U.S. at 293. Under Washington State law, res judicata refers to "the preclusive effect of judgments, including the relitigation of claims and issues that were litigated, or might have been litigated, in a prior action." Loveridge v. Fred Meyer, Inc., 887 P.2d 898, 900 (Wash. 1995) (citing Phillip A. Trautman, Claim and Issue Preclusion in Civil Litigation in Washington, 60 Wash. L. Rev. 805, 805 (1985)).

Plaintiff." (Doc. 27 at 8: 24-27).  Rather, Plaintiff alleges that Defendants "now and in [the] future" violate and will violate his due process rights through Washington's attorney disciplinary system. (Doc. 16: ¶¶ 157, 159).  Because Plaintiff no longer seeks either a direct or a de facto appeal of the prior disciplinary judgments entered against him in state court, Rooker-Feldman does not apply.  See Noel, 341 F.3d at 1155; see also Mothershed, 410 F.3d at 606.  However, as defendant argues, to the extent that Count I may still challenge past disciplinary actions, the Court's review of the prior state judgment against Plaintiff is barred under Rooker-Feldman.  Finally, Plaintiff's remaining claim was not, and could not, have been litigated in the prior state court proceedings against Plaintiff.  See Loveridge, 887 P.2d at 900.  As such, Defendants cannot assert res judicata as a defense to it.  (Doc. 24 at 8-9).

**II.    Article III Standing**

Federal courts may only decide cases or controversies under Article III of the United States Constitution.  U.S. Const. art. III, § 2.  Standing and ripeness are two elements of the case or controversy requirement.  Colwell v. Dep't of Health & Human Servs., 558 F.3d 1112, 1121 (9th Cir. 2009).  "The burden of establishing ripeness and standing rests on the party asserting the claim."  Id. (citing Renne v. Geary, 501 U.S. 312, 316 (1991)).

The irreducible minimum of Article III consists of three elements: (1) "the plaintiff must have suffered an injury in fact–an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; (2) there must be a causal connection between the injury and the conduct of the defendant; and (3) the injury must be likely redressed by a favorable decision.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (internal quotations and citations omitted).  When a plaintiff seeks injunctive and declaratory relief, the plaintiff must also demonstrate that "he has suffered or is threatened with a concrete and particularized legal harm, coupled with a significant likelihood that he will again be wronged in a similar way."  Canatella v. State of California, 304 F.3d 843, 852 (9th Cir. 2002) (internal quotations and citations omitted).  A

plaintiff must do more than demonstrate only a past injury.  <u>San Diego County Gun Rights Comm. v. Reno</u>, 98 F.3d 1121, 1126 (9th Cir. 1996).[4]

When a plaintiff presents a facial challenge to a statute, by "alleg[ing] an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder, he 'should not be required to await and undergo . . . prosecution as the sole means of seeking relief.'"  <u>Babbitt v. United Farm Workers Nat. Union</u>, 442 U.S. 289, 298 (1979) (quoting <u>Doe v. Bolton</u>, 410 U.S. 179, 188 (1973)).  Yet, "[t]he mere existence of a statute, which may or may not ever be applied to plaintiffs, is not sufficient to create a case or controversy within the meaning of Article III."  <u>Stoianoff v. State of Mont.</u>, 695 F.2d 1214, 1223 (9th Cir. 1983).  "[A] plaintiff must demonstrate a genuine threat that the allegedly unconstitutional law is about to be enforced against him."  <u>Id.</u> (citations omitted).  Similarly, the mere existence of state bar rules, promulgated by a state supreme court, are not enough to create a case or controversy within the meaning of Article III.  <u>See</u> <u>Mothershed</u>, 410 F.3d at 610 (reasoning that a plaintiff must first establish standing before raising First Amendment facial challenges to Arizona Supreme Court Rules governing the admission of attorneys to the State Bar of Arizona).

---

[4]  Moreover, the Supreme Court has stated that a plaintiff does not have standing where the "asserted harm is a generalized grievance shared in substantially equal measure by all or a large class of citizens."  <u>Warth v. Seldin</u>, 422 U.S. 490, 499 (1975) (internal quotations omitted).  WSBA Defendants argue that Plaintiff does not have standing because he asserts only a "generalized grievance," as he relies only on his status as a lawyer in the State of Washington to challenge Washington's attorney discipline system. (Doc. 21: 8- 19). However, Plaintiff alleges he has suffered a violation of a personal constitutional right. (Doc. 27 at 6-7: 28, 1).  Notably, "where a harm is concrete, though widely shared, the [Supreme] Court has found injury in fact."  <u>Fed. Election Comm'n v. Akins</u>, 524 U.S. 11, 24 (1998) (internal quotations omitted) (citing <u>Public Citizen v. U.S. Dep't of Justice</u>, 491 U.S. 440, 449-450 (1989)).  Accordingly, Plaintiff can overcome the prohibition against "generalized grievances," if he can establish he has suffered an actual or imminent, concrete and particularized, injury in fact.

1    Plaintiff alleges that the "rules, customs and practices" promulgated by the
2    Washington Supreme Court that govern Washington's attorney discipline system violate his
3    constitutional rights. (Doc. 16: ¶ 151). WSBA Defendants and Defendant Justices argue that
4    Plaintiff lacks standing to challenge the constitutionality of Washington's attorney discipline
5    system.  The mere existence of Washington's disciplinary rules does not create a case or
6    controversy within the meaning of Article III.  See Stoianoff, 695 F.2d at 1223.  Plaintiff
7    must demonstrate a credible threat of future discipline by Defendants under the rules.  If
8    Plaintiff can demonstrate such, then the Court will not require him to await further discipline
9    as his "sole means of seeking relief." See Babbitt, 442 U.S. at 298.  Therefore, Plaintiff's
10   standing rests on the first element, whether he has suffered an actual or imminent injury in
11   fact. Lujan, 504 U.S. at 560.

12       Countering Plaintiff's claims, Defendants cite Partington v. Gedan, 961 F.2d 852 (9th
13   Cir. 1992), and Canatella v. California, 304 F.3d 843 (9th Cir. 2002), in support of their
14   argument that Plaintiff does not face a credible threat of prosecution.  Thus, he has not met
15   his burden of establishing the elements of standing.  In Partington, the plaintiff filed suit
16   under 42 U.S.C. § 1983 against the Justices of the Hawaii Supreme Court.  The plaintiff
17   alleged past injuries and sought an injunction restraining the defendants from "sanctioning,
18   accusing, or making findings of unprofessional conduct without affording [the plaintiff] prior
19   notice and an opportunity to be heard."  Partington, 961 F.2d at 859 (internal quotations
20   omitted).  Even if the plaintiff showed that the defendants deprived him of due process in the
21   past, the plaintiff did not allege sufficient facts to demonstrate that the defendants would
22   again violate his due process rights in the future.  As such, the Ninth Circuit found that the
23   plaintiff's claim was "little more than a request for the Hawaii Supreme Court to comply with
24   the rights of due process in the future." Id. at 862.  Applying Partington to this case,
25   Plaintiff's past injuries, absent a showing that Plaintiff faces an imminent threat of future
26   injury, are insufficient to support standing under Article III.  See id.

27       Similarly, in Canatella, the Ninth Circuit recognized that past injuries alone were
28   insufficient to confer standing on the plaintiff.  There, the plaintiff had been subject to federal

1    and state impositions of monetary sanctions on twenty-six occasions and, as a result, the

2    California State Bar initiated an investigation into the plaintiff. Canatella, 304 F.3d at 847.

3    In response, the plaintiff brought suit under § 1983, raising First and Fourteenth Amendment

4    challenges to certain provisions of the state bar statutes and rules of professional conduct

5    under which he could ultimately be subject to discipline. Id. at 848.  While the Ninth Circuit

6    acknowledged that past prosecution by itself does not give rise to a "case or controversy"

7    within the meaning of Article III, it found that the threat of future prosecution to the plaintiff

8    was "actual," not merely "hypothetical, and conjectural." Id. at 852, 848.  In so finding, the

9    court considered: (1) that plaintiff had "personally faced discipline" under the specific

10   provisions he challenged, (2) that plaintiff had "nowhere conceded that he [would] refrain

11   from the type of expression that he believes is constitutionally protected, is necessary to the

12   performance of his duties as an advocate, and is the basis upon which he may be disciplined

13   under the challenged statutes in the future," and (3) that the Bar did not concede it would not

14   rely on the challenged provisions to bring about disciplinary action were he to be sanctioned

15   again. Id. at 852-853.  On this record, the court found that "there is a strong likelihood [the

16   plaintiff] may again face discipline under the challenged provisions." Id. at 853.[5]

17        Here, Plaintiff's past interactions with Washington's attorney disciplinary system

18   alone do not constitute an injury sufficient to confer standing on Plaintiff. See Partington,

19   961 F.2d at 862; see also Canatella 304 F.3d at 852.  Additionally, Plaintiff has not

20   established that any present, continuing actions of Defendants place him under imminent

21

22

---

23        [5] Moreover, in Canatella the plaintiff brought a First Amendment claim in addition to
     his Fourteenth Amendment claim. Canatella, 304 F.3d at 847.  The Ninth Circuit recognized
24   the relaxed prudential requirements for standing in the First Amendment context. Id. at 853
     (citing Broadrick v. Oklahoma,  413 U.S. 601, 612 (1973); Secretary of State of Md. v.
25   Joseph H. Munson Co., 467 U.S. 947, 956 (1984)).  The court found that the plaintiff's prior
     interactions with the state bar had "at least some continuing, present adverse effects, whether
26   these effects be further discipline, or the chilling of what may be constitutionally protected
     speech." Id. (internal quotations and citations omitted).  Therefore, the Ninth Circuit found
27   the existence of an imminent threat of injury to the plaintiff.
28

threat of injury.  Plaintiff alleges that two letters from the WSBA demonstrate an imminent threat of injury.  The Court disagrees.

Initially, due to his disagreement with the WSBA over proper disbursement of the funds, Plaintiff delayed payment of the restitution ordered by the Washington Supreme Court in In re Eugster. (Doc. 27 at 22: Appendix A).  In response, the WSBA notified Plaintiff by letter that it was his responsibility to "take the necessary action to effectuate the [c]ourt's order." (Id. at 23: Appendix A).  Plaintiff alleges that the WSBA's response amounts to a threat to Plaintiff of "further disciplinary action and potential disbarment" and a "readiness on the part of the Bar Association to continue to focus on [Plaintiff]." (Id. at 12: 6-9, 11-12).  Nonetheless, Plaintiff complied with the Washington Supreme Court's order on March 21, 2010 by sending a check payable to the trust account for the Estate of Marion Stead.  (See id. at 25: Appendix A).  Since then, Plaintiff has not alleged that the WSBA has taken any action regarding the matter.  Secondly, Plaintiff alleges that the letter sent from Mr. Burke to Ms. Kivett constitutes a threat of further disciplinary proceedings and demonstrates a willingness on the part of the WSBA to "reawaken" the allegations made against him in that matter.  Plaintiff's assertions about the future intentions of Defendants based on the content of the WSBA's communications are speculative, though.

Both of the warning letters hardly demonstrate "a significant likelihood that [Plaintiff] will again be wronged in a similar way." Canatella, 304 F.3d at 852 (internal citations and quotations omitted). (See id. at 13: 1-8; see also Doc. 16: ¶ 27).  The Court finds that Plaintiff's situation is distinguishable from the plaintiff's situation in Canatella.  Notably, Plaintiff has not alleged a constitutional deprivation under the First Amendment.  See Canatella, 304 F.3d at 853.  Thus, the relaxed prudential requirements of standing do not apply.  Moreover, unlike in Canatella, Plaintiff concedes that he does not intend to engage in misconduct in the future. (Doc. 27 at 12: 22).  Such a concession further diminishes the possibility that Plaintiff will be subject to discipline under Washington's attorney discipline system, as well as undercuts his argument that he has standing to bring this claim.  Additionally, Plaintiff does not challenge a specific provision or rule that he finds necessary

to the performance of his duties as an advocate and under which he would be subject to discipline in the future.  Instead, Plaintiff alleges he feels "completely constrained in the practice of law because of the unconstitutionality of the System." (Id. at 17-18).  Given that Plaintiff does not challenge the constitutionality of a specific rule or procedure, Defendants cannot concede that they will refrain from imposing discipline under the "system" were Plaintiff to engage in sanctionable conduct under a particular rule. (See id. at 8: 52-53).  As such, the considerations that the Ninth Circuit relied upon in Canatella to find standing do not exist here.  The Court finds that Plaintiff cannot establish standing on the basis of these communications; any suggested  future discipline by Defendants amounts to a conjectural or hypothetical injury, rather than one that is actual or imminent. See Lujan, 504 U.S. at 560.

Finally, Plaintiff asserts that he has standing to bring this suit based on the Court's reasoning in Miller v. Washington State Bar Ass'n, 679 F.2d 1313 (9th Cir. 1982).  In Miller, the WSBA placed a letter of admonition in the plaintiff lawyer's record.  Miller, 679 F.2d at 1314.  The plaintiff alleged that the issuance of the admonition violated his First Amendment rights, and he had no right to appeal this action in Washington state courts.  Id. at 1314-15.  Additionally, the court concluded that the issuance of the letter amounted to a disciplinary action sufficient to constitute a controversy within the meaning of Article III. Id. at 1318.  The court found that because no review of the WSBA's actions was available as of right in state court, "such review [was] available in federal court for consideration of plaintiff's constitutional claim."  Id.  Here, Plaintiff alleges he has no right of appeal as to the WSBA's statements in the letter from Mr. Burke to Ms. Kivett regarding Plaintiff's past conduct, to the retention of records against him for the stated five year period, or to the alleged accompanying "scrutiny."  (Doc. 16 at 7: ¶ 28; Doc. 27 at 2: 24-25).  Based on the reasoning of the Court in Miller, Plaintiff contends that he should be afforded standing because he has no right to appeal of these actions. (Doc. 27 at 2: 24-25).  However, Plaintiff does not seek review of the WSBA's issuance of the letter in this case, nor does he allege that the letter forms the basis for his present constitutional claims under the Fourteenth Amendment.  Moreover, unlike in Miller, Plaintiff does not bring a claim under the First

1   Amendment. According to Plaintiff, this action has "nothing to do with an ongoing case and

2   it has nothing to do with a past case." (Id. at 10: 13-14). As Plaintiff does not seek review

3   of the WSBA's warning to him in the Kivett letter, Miller does not establish Plaintiff's

4   standing to bring this suit.

5        Plaintiff has failed to show the existence of a case or controversy within the meaning

6   of Article III. See U.S. Const. art. III, § 2. Plaintiff's past interactions with Washington's

7   attorney discipline system alone do not demonstrate that "he has suffered or is threatened

8   with a concrete and particularized legal harm, coupled with a significant likelihood that he

9   will again be wronged in a similar way." Canatella, 304 F.3d at 852 (internal quotation

10  marks and citations omitted). And, Plaintiff admits that he has no claim regarding any past

11  or ongoing disciplinary proceedings.[6] Rather, his claim is based on his fear of continued

12  scrutiny or threat of future discipline. As such, Plaintiff merely seeks an absolute shield from

13  discipline in any form arising out of future violations should they occur, not redress for an

14  actual or imminent injury. "At this stage, any ruling from a federal district court would be

15  an advisory opinion, something federal courts cannot give. In the absence of some concrete

16  threatened injury, Article III bars the relief requested . . ." Partington, 961 F.2d at 862.

17  **III.    Ripeness**

18       While "standing is primarily concerned with *who* is a proper party to litigate a

19  particular matter, ripeness addressees *when* that litigation may occur." Colwell, 558 F.3d at

20  1123 (citing Lee v. Oregon, 107 F.3d 1382, 1387 (9th Cir. 1997)) (emphasis in original). A

21  suit must present "concrete legal issues, presented in actual cases, not abstractions" to be ripe

22  within the meaning of Article III. Id. (citing United Pub. Workers v. Mitchell, 330 U.S. 75,

23  89 (1947)) (internal quotations omitted). The constitutional component of ripeness often

24  "coincides squarely with standing's injury in fact prong." Stormans, Inc. v. Selecky, 586

25

26       [6] Plaintiff has caused much confusion by his use of both past and present tense in his
    amended complaint. (See, e.g., Doc. 16: ¶ 157). However, Plaintiff's admissions and his
27  abandonment of Count II limit his remaining claim to current and future due process
28  violations.

1    F.3d 1109, 1122 (9ᵗʰ Cir. 2009) (citing Thomas v. Anchorage Equal Rights Comm'n, 220

2    F.3d 1134, 1138 (9ᵗʰ Cir. 2000)).  As outlined in the discussion of the injury in fact element

3    of standing, Plaintiff has not demonstrated that he is under imminent threat of injury.

4    Accordingly, this claim is unripe as Plaintiff does not present "concrete legal issues" to this

5    Court, but rather, "abstractions." See Colwell, 558 F.3d at 1123.

6    **IV.    Immunities**

7    Plaintiff's suit can be dismissed against all of the Defendants on standing and ripeness

8    grounds under Rule 12(b)(1).  Assuming, *arguendo*, that Plaintiff could establish standing,

9    several of the Defendants are also immune from liability under the Eleventh Amendment and

10   personal immunity doctrines as a matter of law, which the Court will now address.

11

12   **A.  Eleventh Amendment Immunity**

13   The Eleventh Amendment prohibits suits against a state by its own citizens or citizens

14   of other states in federal court.  Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89,

15   98 (1984) (superceded by statute on other grounds); see also Holley v. California Dep't of

16   Corrections, 599 F.3d 1108, 1111 (9ᵗʰ Cir. 2010).[7]  This immunity extends to state agencies,

17   including state bar associations.  Hirsh v. Justices of the Supreme Court of the State of Cal.,

18   67 F.3d 708, 715 (9ᵗʰ Cir. 1995) (holding that the State Bar of California was a state agency

19   and not amenable to suit under the Eleventh Amendment).  Eleventh Amendment immunity

20   also applies to "a suit against a state official in his or her official capacity" because such a

21   suit "is no different than a suit against the State itself."  Will v. Mich. Dep't of State Police,

22   491 U.S. 58, 71 (1989).

23   The Supreme Court has held that "the relief sought by a plaintiff suing a state is

24   irrelevant to the question whether the suit is barred by the Eleventh Amendment."  Seminole

25   Tribe of Fla. v. Florida, 517 U.S. 44, 58 (1996); see Pennhurst, 465 U.S. at 100.  However,

26

27          [7] Eleventh Amendment immunity may only be overridden by a waiver by the state
     or abrogation by Congress.  Pennhurst, 465 U.S. at 99.  Here, the State of Washington has
28   not waived its Eleventh Amendment immunity.  (Doc. 24 at 7: 12-14).

the Supreme Court has also held that the Eleventh Amendment does not bar suits against a state official when the suit seeks prospective injunctive relief to "end a continuing violation of federal law." Seminole Tribe of Fla., 517 U.S. at 73 (quoting Green v. Mansour, 474 U.S. 64, 78 (1985)).  Accordingly, a plaintiff may seek a declaratory judgment or injunctive relief against state officers in their official capacities.  See E.E.O.C. v. Peabody Western Coal Co., ___ F.3d ___, No. 06-17261, 2010 WL 2572001, at *12 (9th Cir. 2010); see also Ex Parte Young, 209 U.S. 123 (1908).  However, the Eleventh Amendment does not bar suits against state officials in their individual capacities.  Hafer v. Melo, 502 U.S. 21, 30-31 (1991); see also Suever v. Connell, 579 F.3d 1046, 1060 (9th Cir. 2009).

Plaintiff seeks declaratory and injunctive relief against the Washington State Bar Association, the members of the Board of Governors of the Washington State Bar Association, individually, and the Justices of the Washington Supreme Court, individually. (Doc. 27 at 9: 5-9; Doc. 16: ¶ 158).  First, because the Ninth Circuit has recognized bar associations as state agencies for the purposes of Eleventh Amendment immunity, Plaintiff's claim against the WSBA is barred in its entirety.  See Hirsh, 67 F.3d at 715.  However, because Plaintiff seeks relief from Defendant Justices and WSBA Defendants only in their individual capacities, these claims are not barred by the Eleventh Amendment.  See Hafer, 502 U.S. at 31.

**B. Personal Immunity**

When Eleventh Amendment immunity is not applicable, government officials may be immune from liability under various personal immunity doctrines.  The Court has already determined that Plaintiff lacks standing to challenge the *application* and *implementation* of the "rules, customs and practices" of Washington's attorney discipline system. (Doc. 16: ¶ 151).  With regards to the *implementation* of the system, Defendant Justices also enjoy legislative immunity.  Before addressing the application of legislative immunity to the actions of Defendant Justices, the Court will discuss why judicial immunity does not apply

to Defendants.  The Court declines to reach the question of whether any personal immunity

doctrines apply to the WSBA Defendants.[8]

### 1.  Judicial Immunity

Judges are immune from liability for damages stemming from judicial actions taken

properly within the jurisdiction of their courts.  Ashelman v. Pope, 793 F.2d 1072, 1075 (9th

Cir. 1986).  This immunity is construed broadly, as "[a] judge will not be deprived of

immunity because the action he took was in error, was done maliciously, or was in excess

of his authority; rather, he will be subject to liability only when he has acted in the clear

absence of all jurisdiction."  Stump v. Sparkman, 435 U.S. 349, 356-57 (1978) (internal

quotations omitted) (citing Bradley v. Fisher, 80 U.S. 335, 351 (1871)).  Though, judicial

immunity is limited in that it is conferred on judges based not on their "location within the

government," but rather by the "special nature of their responsibilities."  Butz v. Economou,

438 U.S. 478, 511 (1978).  "[A]bsolute judicial immunity does not apply to non-judicial acts,

i.e. the administrative, legislative, and executive functions that judges may on occasion be

assigned to perform."  Duvall v. County of Kitsap, 260 F.3d 1124 (9th Cir. 2001) (citing

Forrester v. White, 484 U.S. 219, 227 (1988)).

Moreover, judicial immunity may only extend to certain forms of relief.  42 U.S.C.

§ 1983 provides that, "in any action brought against a judicial officer for an act or omission

---

[8] If Defendant Justices have immunity in performing legislative and judicial functions, then WSBA Defendants argue that they enjoy quasi-judicial immunity for analogous actions under Washington Supreme Court General Rule 12.3, as applied under Fed. R. Civ. P. 17(b). Under Federal Rule of Civil Procedure 17(b), "capacity to sue or be sued is determined . . . by the law of the state where the court is located . . ." Fed. R. Civ. P. 17(b).  Washington Supreme Court General Rule 12.3 states:

> All boards, committees, or other entities, and their members and personnel, and all personnel and employees of the Washington State Bar Association, acting on behalf of the Supreme Court under the Admission to Practice Rules, the rules for Enforcement of Lawyer Conduct, and the Disciplinary Rules for Limited Practice Officers, shall enjoy quasi-judicial immunity if the Supreme Court would have immunity in performing the same functions.

Wash. General Rule 12.3.  Because Plaintiff lacks standing, this Court declines to reach the question of whether quasi-judicial immunity under Rule 12.3 applies to WSBA Defendants.

taken in such officer's judicial capacity, *injunctive relief shall not be granted* unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983 (emphasis added).[9]  Accordingly under § 1983, judicial immunity extends to suits seeking injunctive relief.  However, the limits in § 1983 do not appear to alter the availability of declaratory relief.  See Brandon E. ex rel Listenbee v. Reynolds, 201 F.3d 194, 197-198 (3rd Cir. 2000).

### 2.  Legislative Immunity

Although judicial immunity does not apply to non-judicial acts, judges may have immunity for the legislative functions they may on occasion be assigned to perform.  In general, state legislators are personally immune from liability for their legislative acts, and this legislative immunity extends to suits for injunctive and declaratory relief, as well as to suits for damages.  Supreme Court of Va. v. Consumers Union of the U.S., Inc., 446 U.S. 719, 731, 733 (1980).  Legislative immunity also extends to individuals who create rules for an attorney discipline system.  When a state's legislators delegate their "entire legislative power with respect to regulating the Bar" to a state supreme court, the state supreme court and its members are "the State's legislators for the purpose of issuing the Bar Code."  Id. at 734.  Thus, the United States Supreme Court has held that state supreme court justices are immune from suit in their individual capacities when promulgating rules of attorney discipline because they are acting in a legislative capacity.  Id.

As noted, Plaintiff asserts that "[t]his action has nothing to do with an ongoing case and it has nothing to do with a past case." (Doc. 27 at 10: 13-14).  He also asserts that the suit is "not against the [J]ustices with respect of [sic] conduct considered to be judicial in character." (Id. at 14: 18-20).  Instead, Plaintiff contests the Defendant Justices actions that are "legislative – they are responsible for the creation of the Washington Lawyer

---

[9] Prior to 1996, judicial immunity did not bar injunctive or declaratory relief under 42 U.S.C. § 1983.  Pulliam v. Allen, 466 U.S. 522, 542-543 (1984).

Disciplinary System." (<u>Id.</u> at 15: 18-20).  Thus, judicial immunity is not at issue with respect to Defendant Justices.

With regard to their legislative actions, the Washington Supreme Court adopts and approves the Washington Rules of Professional Conduct and the Rules for Enforcement of Lawyer Conduct (ELC) proposed by the WSBA Board of Governors.  RCW 2.48.060.  As in <u>Consumers Union</u>, the Washington Supreme Court is "exercising the [s]tate's entire legislative power with respect to regulating the Bar, and its members are the [s]tate's legislators for the purpose of issuing the Bar Code."  446 U.S. at 734.  Accordingly, Defendant Justices enjoy legislative immunity for their roles in implementing Washington's attorney discipline system.  Defendant Justices' legislative immunity bars Plaintiff's claims for injunctive and declaratory relief in their entirety.  <u>See</u> <u>id.</u> at 733.

### CONCLUSION

In conclusion, Plaintiff lacks standing to bring this suit because he has not demonstrated to this Court that he has suffered an actual or imminent injury in fact. Alternatively, the WSBA is entitled to immunity under the Eleventh Amendment and the Washington Supreme Court Justices enjoy legislative immunity.  However, the Court declines to determine whether the members of the WSBA Board of Governors are entitled to quasi-judicial immunity in their individual capacities.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Washington State Bar Association and Washington State Bar Association Board of Governors Salvador A. Mungia, Steven G. Toole, Mark A. Johnson, G. Geoffrey Gibbs, Brian L. Comstock, Loren Scott Etengoff, Anthony David Gipe, Lori S. Haskell, David S. Heller, Nancy L. Isserlis, Leland B. Kerr, Carla C. Lee, Roger A. Leishman, Catherine L. Moore, Patrick A. Palace, Marc L. Silverman, and Brenda Williams Motion to Dismiss (Doc. 20) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Chief Justice Barbara A. Madsen, Justices Gerry L. Alexander, Charles W. Johnson, Richard B. Sanders, Tom Chambers,

1  Susan J. Owens, Mary E. Fairhurst, James M. Johnson, and Debra L. Stephens of the

2  Washington State Supreme Court Motion to Dismiss (Doc. 23) is **GRANTED**.

3       **IT IS FURTHER ORDERED** that Plaintiff's Amended Complaint (Doc. 16) is

4  **DISMISSED without prejudice**.

5       DATED this 23rd day of July, 2010.

6

7

8                         Stephen M. McNamee
                          United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28